**Edward BURKOW, Plaintiff,**

v.

**CITY OF LOS ANGELES, Defendant.**

**No. CV 00–5860 AHM (MANx).**

United States District Court,
C.D. California.

Oct. 17, 2000.

Geoffrey L. Thomas, Steven .D. Allison, Joanna Joyce Weiss, Richard A. Gallegly, Paul, Hastings, Janofsky & Walker LLP, Costa Mesa, CA, for Plaintiff.

James K. Hahn, City Atty., Michael L. Claessens, Asst. City Atty., Laurie Rittenberg, Deputy City Atty., Los Angeles, CA, for Defendant.

## ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

MATZ, District Judge.

### INTRODUCTION

Plaintiff Edward Burkow wants to advertise his car for sale by placing a "For Sale" sign in the window and leaving it there, even while the car is parked on a public street. Los Angeles Municipal Code ("LAMC") § 80.75 prohibits him from doing so. On May 31, 2000, Plaintiff filed this action against Defendant City of Los Angeles seeking declaratory and injunctive relief. He claims that § 80.75 impermissibly infringes on his rights under the First Amendment of the United States Constitution and Article I, Section 2 of the California Constitution. Before the Court is his Motion for Preliminary Injunction ("Motion") seeking to enjoin Defendant from enforcing LAMC § 80.75.

The Court has reviewed the papers submitted and the file in this case, and considered oral argument of counsel. The Court grants Plaintiff's Motion because Defendant has failed to satisfy its burden to justify § 80.75's restriction on commercial speech under each of the elements in *Central Hudson Gas & Electric Corporation v. Public Service Commission*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).

### FACTUAL BACKGROUND

On September 23, 1999, Edward Burkow parked his car on Willoughby Street in the City of Los Angeles. Burkow Dec. ¶ 2. He placed two 8 ½ by 11 inch "For Sale" signs in the windows of the car, thereby saving the expense of running a classified news-

Peter J. Eliasberg, ACLU Foundation of Southern California, Los Angeles, CA,

paper advertisement. Burkow Dec. ¶¶ 2–3. The City of Los Angeles cited Burkow for violation of LAMC § 80.75.[1] Burkow Dec. Exh. 3. Burkow paid a $35 fine and unsuccessfully contested the citation before an administrative hearing examiner and later in Los Angeles Municipal Court. Burkow Dec. ¶¶ 5–7. Burkow, believing that the most effective and least expensive means to advertise his car is to park it on the street with a "For Sale" sign, has not yet sold his car. Burkow Dec. ¶ 8.

## DISCUSSION

### I. Standards For Issuing A Preliminary Injunction

■ A plaintiff is entitled to a preliminary injunction upon showing "either (1) a combination of probable success on the merits and the possibility of irreparable injury or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in his favor." *Sardi's Restaurant Corp. v. Sardie,* 755 F.2d 719, 723 (9th Cir.1985) (*citing Apple Computer, Inc. v. Formula Int'l, Inc.,* 725 F.2d 521, 523 (9th Cir.1984)). These standards are not two distinct tests, but rather are "the opposite ends of a single continuum in which the required showing of harm varies inversely with the required showing of meritoriousness." *Rodeo Collection, Ltd. v. West Seventh,* 812 F.2d 1215, 1217 (9th Cir.1987) (internal quotations omitted).

### II. General Principles Relating to Commercial Speech

The following analysis applies federal constitutional law because both sides focus on those principles and neither side suggests there is any difference between those standards and the judicial interpretation of Article I, Section 2 of the California Constitution.

■ In *Central Hudson,* the Supreme Court announced a four-part test to analyze the validity of governmental restrictions on commercial speech:

> In commercial speech cases, then, a four-part analysis has developed. [1] At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading. [2] Next, we ask whether the asserted governmental interest is substantial. If both inquiries yield positive answers, we must determine [3] whether the regulation directly advances the governmental interest asserted, and [4] whether it is not more extensive than is necessary to serve that interest.

447 U.S. at 566, 100 S.Ct. 2343. Furthermore, the government bears the burden of proof: "As the party seeking to regulate commercial speech, the City has the burden of affirmatively establishing that the ordinance meets each of [the *Central Hudson* ] elements." *Desert Outdoor Advertising, Inc. v. City of Moreno Valley,* 103 F.3d 814, 819 (9th Cir.1996) (reversing grant of summary judgment for the defendant city because, among other reasons, the city, whose ordinance lacked any statement of purpose concerning aesthetics and safety, failed to "provide any evidence that it had an interest in safety and aesthetics or that the [sign] ordinance furthered those interests"). "This burden is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech

---

1. The full text of LAMC § 80.75 is as follows:
   (a) No person shall display for the purpose of sale or rent or shall rent, advertise or offer for sale or rent, or sell or rent any bicycle or any vehicle· which is subject to registration under the California Vehicle Code from or upon any public or private property which is not the place of business of a bicycle retailer or a duly licensed vehicle dealer.

   (b) The provisions of Subsection (a) hereof shall not apply to the registered owner of a vehicle or bicycle when displaying advertising, offering, selling or renting such vehicle or bicycle upon property of which he is the owner, lessee or lawful occupant, nor when displaying, advertising or offering such vehicle or bicycle for sale or rent while in the act of driving such vehicle or riding such bicycle.

must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Edenfield v. Fane*, 507 U.S. 761, 770–71, 113 S.Ct. 1792, 123 L.Ed.2d 543 (1993).

### III. Application to This Case: Whether Plaintiff Is Likely To Succeed On The Merits

#### A. Whether The First Amendment Protects This Speech

■ Defendant contends that the ordinance is a valid restriction on commercial speech under *Central Hudson*. Defendant does not challenge Plaintiff's standing to bring either a facial or "as applied" challenge. Nor does it contend that § 80.75 is a valid time, place or manner restriction on speech.

On its face, and as Defendant concedes, LAMC § 80.75 restricts speech that is commercial, by prohibiting the advertising, offering, selling or renting of "any bicycle or any vehicle which is subject to regulation under the California Vehicle Code from or upon any public or private property which is not the place of business of a bicycle retailer or duly licensed vehicle dealer."[2] *See* LAMC § 80.75(a). "For commercial speech to come within [the First Amendment], it at least must concern lawful activity and not be misleading." *Central Hudson*, 447 U.S. at 566, 100 S.Ct. 2343. There is no allegation that Burkow's proposed sale was either misleading or inherently unlawful. Thus, his expression is protected by the First Amendment.

#### B. Whether The Asserted Governmental Interests Are Substantial

■ "Next, we ask whether the asserted governmental interest is substantial." *Id.* Defendant must present "evidence that it had an interest in safety and aesthetics," or some other substantial governmental interest. *See Desert Outdoor Advertising*, 103 F.3d at 819. Defendant does not rebut Plaintiff's contention that the ordinance lacks any statement of purpose on its face or in its legislative history. *See* Motion at 4. Instead, Defendant offers several *post hoc* rationales for the ordinance — supported by defense counsel's argument rather than evidence.[3] Counsel asserts that the ordinance: (1) preserves safety by reducing distractions that are likely to cause traffic accidents, (2) promotes the flow of traffic and access to businesses by discouraging would-be automobile sellers from parking on the busiest streets, (3) protects public streets from blight and (4) discourages trafficking in stolen vehicles and other unlicensed automobile dealers. *See* Opp. at 2–7.

"Unlike rational-basis review, the *Central Hudson* standard does not permit us to supplant the precise interests put forward by the [government] with other suppositions. Neither will we turn away if it appears that the stated interests are not the actual interests served by the restriction." *Edenfield*, 507 U.S. at 768, 113 S.Ct. 1792 (internal citations omitted). Ordinarily in First Amendment cases "[t]he relevant governmental interest is determined by objective indicators as taken from the face of the statute, the effect of the statute, comparison to prior law, facts surrounding enactment of the statute, the stated purpose, and the record of proceedings." *City of Las Vegas v. Foley*, 747 F.2d 1294, 1297 (9th Cir.1984). These are all absent here. Nevertheless, because the City invokes traffic safety, public access, aesthetic and other interests, and solely for purposes of ruling on this Motion, the Court will assume at this early stage of the proceedings that at trial Defendant would be able to introduce evidence supporting its counsel's contentions.[4] In any event,

---

2. Excepted from the advertising prohibition are (1) a registered vehicle owner who advertises "upon property of which he is the owner, lessee or lawful occupant" and (2) advertising "while in the act of driving such vehicle ..." *See* LAMC § 80.75(b).

3. Defendant submitted no declarations or any other evidence.

4. What seems equally plausible, at the very least, is that the political forces behind this ordinance included used car dealers and other business or property-owning interests that

there is no question that (and Plaintiff concedes that) the proffered safety and aesthetic interests are traditional "substantial governmental interests." *See Desert Outdoor Advertising,* 103 F.3d at 819.

### C. Whether The Ordinance Directly Advances The Asserted Governmental Interests

■ "If [the expression is protected by the First Amendment and the asserted governmental interest is substantial], we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest." *Central Hudson,* 447 U.S. at 566, 100 S.Ct. 2343.

In *Edenfield,* the plaintiff successfully challenged a ban on solicitation by accountants as an impermissible infringement on commercial speech. *See* 507 U.S. at 777, 113 S.Ct. 1792. The government "assert[ed] an interest in protecting consumers from fraud or overreaching by CPA's . . . and maintain[ing] both the fact and appearance of CPA independence in auditing a business and attesting to its financial statements." *Id.* at 768, 113 S.Ct. 1792. Though it recognized that the asserted interests were substantial, the Supreme Court held that the ban on solicitation was invalid, reasoning:

> The Board has not demonstrated that, as applied in the business context, the ban on CPA solicitation advances its asserted interests in any direct and material way. It presents no studies that suggest personal solicitation of prospective business clients by CPA's creates the dangers of fraud, overreaching, or compromised independence that the Board claims to fear. The record does not disclose any anecdotal evidence, either from Florida or another State, that validates the Board's suppositions. . . . Not even Fane's own conduct suggests that the Board's concerns are justified.

understandably would oppose would-be buyers and sellers of used cars using streets or other locations to set up the equivalent of an "automobile swap meet."

The only suggestion that a ban on solicitation might help prevent fraud and overreaching or preserve CPA independence is the affidavit of Louis Dooner, which contains nothing more than a series of conclusory statements that add little if anything to the Board's original statement of its justifications.

*Id.* at 771, 113 S.Ct. 1792 (internal citations omitted).

Here, Defendant attempts to show with a rhetorical question unsupported by any evidence that LAMC § 80.75 in fact alleviates the suggested harms:

> How materially the regulation advances and supports the government interest may be answered this way: it is difficult to assess the magnitude of the problems sought to be addressed, but we know that historically that [sic] these problems were serious enough to warrant restrictive legislation. Additionally "material" is an inexact term. For example, would the prevention of one serious accident per year materially advance the government interest? City urges this answer is yes.

Opp. at 9.

Although the Court finds that Defendant has proffered at least two substantial governmental interests —— safety and aesthetics —— to justify LAMC § 80.75, the Court is unwilling to accept similar "speculation or conjecture" on how this ordinance "directly advances the governmental interest asserted."[5] *See Edenfield,* 507 U.S. at 770–71, 113 S.Ct. 1792. Like the defendant in *Edenfield,* the City has presented no studies or even anecdotal evidence, and "[n]ot even [Plaintiff]'s own conduct suggests that [Defendant]'s concerns are justified." *See id.* at 771, 113 S.Ct. 1792. Instead of demonstrating how "the harms it recites are real and that its restriction will in fact alleviate them," Defendant employs circular reasoning to suggest that the

5. See *supra* Part III.B for a list of harms proffered by Defendant.

mere act of passing the ordinance is evidence that there were "serious" problems. *See id.;* Opp. at 9. This is inadequate.

## D. Whether the Ordinance Is Reasonably Tailored To Serve A Substantial Interest

"[L]aws restricting commercial speech, unlike laws burdening other forms of protected expression, need only be tailored in a reasonable manner to serve a substantial state interest in order to survive First Amendment scrutiny." *Edenfield,* 507 U.S. at 767, 113 S.Ct. 1792. "[I]f there are numerous and obvious less-burdensome alternatives to the restriction on commercial speech, that is certainly a relevant consideration in determining whether the 'fit' between ends and means is reasonable." *City of Cincinnati v. Discovery Network, Inc.,* 507 U.S. 410, 418 n. 13, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993) (invalidating city ordinance that banned newsracks dispensing commercial handbills because they were "no more harmful than the permitted newsracks, and have only a minimal impact on the overall number of newsracks on the city's sidewalks").

Defendant claims that "the restriction is narrowly tailored to situations where the traveling motorist is distracted by a small sign in a parked car." Opp. at 9. The Court disagrees. First, only vehicle "For Sale" signs are prohibited; all other signs are permitted on parked cars, although they could be even more distracting to passing motorists. For example, under LAMC § 80.75, commercial advertisements on cars could offer *anything* for sale, such as ads depicting jewelry, drugs or sexually explicit magazines, *except* the car on which the sign is mounted. In short, § 80.75 does not "fit" the proffered safety concerns. *See Discovery Network,* 507 U.S. at 418, 113 S.Ct. 1505.

Next, the distinction in LAMC § 80.75(b) between signs in parked cars and signs in moving cars fails not only to be narrowly tailored but also to be rationally related to safety objectives. The Court cannot fathom how a sign in a parked car is more dangerous than the same sign in a moving car; indeed, there is a greater likelihood that a passing motorist will avert his eyes to read a sign posted in a moving vehicle. In contrast, if a driver wishes to read a sign in a parked vehicle, and if road conditions permit, he can slow down or stop or even back up.

Next, contrary to Defendant's contention, the ordinance is not reasonably tailored to "situations where the traveling motorist is distracted by a small sign in a parked car" because it applies to "For Sale" signs without regard to the size of the sign or its visibility from the road.

As to the indisputably important "aesthetic" concerns, Defendant could minimize the alleged harms with measures far short of outright prohibition. For example, extensive parking regulations could permit owners to park their cars displaying "For Sale" signs without impeding public access to limited-availability parking spaces; like all vehicles, the vehicle with the "For Sale" sign could be permitted to remain in any given space only for a fixed or limited period. Similarly, to prevent streets from becoming a "de facto used car lot," a seller could be precluded from parking more than one car with a "For Sale" sign on any given street at any single time.

Furthermore, serious questions about the sufficiency of the advertising alternatives — *i.e.,* opportunities to exercise the right to speak — left open to Plaintiff remain. In *Linmark Assoc., Inc. v. Township of Willingboro,* 431 U.S. 85, 93, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977), the Supreme Court invalidated on First Amendment grounds an ordinance banning "For Sale" and "Sold" signs on residential property. The ordinance was designed to stem what the township perceived as the flight of white homeowners from a racially integrated community. The Supreme Court noted:

> The options to which sellers realistically are relegated — primarily newspaper advertising and listing with [ ] agents — involve more cost and less autonomy than 'For Sale' signs ... and may be

less effective media for communicating the message that is conveyed by a 'For sale' sign.... The alternatives, then, are far from satisfactory.

*Id.* (internal citations omitted).

Here, Plaintiff "believe[s] the least expensive and most effective method for [him] to sell [his] car is to advertise the sale of [his] car by placing a 'For Sale' sign within the car while it is parked on a street within the City of Los Angeles." Burkow Decl. ¶ 8. Who is to say he is wrong? Certainly, Defendant hasn't demonstrated that he is. A classified ad in a newspaper does not as effectively advertise and describe the precise car that is for sale as does a simple "For Sale" sign posted on the car. And yet a newspaper ad would cost more.[6] Advertising the car for sale on a dealer's lot would involve even "more cost and less autonomy." *See Linmark,* 431 U.S. at 93, 97 S.Ct. 1614. For these reasons, then, the ordinance does not leave "satisfactory" alternatives available to would-be sellers.

Based on all of the foregoing, Plaintiff has demonstrated probable success on the merits.[7]

## IV. Whether Plaintiff Will Suffer Irreparable Harm

To determine whether to issue a preliminary injunction, the Court must consider the possibility of irreparable harm to the plaintiff if the injunction is not imposed. The City of Los Angeles argues that Plaintiff cannot show the requisite irreparable harm because he has alternative "ways to offer his car for sale at little or no cost to him." Opp. at 10. That contention is debatable, particularly as to the costs.

Moreover, Plaintiff is entitled to a preliminary injunction because he has "demonstrated probable success on the merits of [his] claim" that LAMC § 80.75 impermissibly restricts protected speech. *See S.O.C., Inc. v. County of Clark,* 152 F.3d 1136, 1148 (9th Cir.1998) (finding that a preliminary injunction against an ordinance prohibiting "off-premises canvassing" should have been issued because the plaintiff demonstrated probable success on the merits of its First Amendment claim and noting that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury") (quoting *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)).

## CONCLUSION

For the foregoing reasons, and good cause appearing therefor, the Court orders as follows:

1. The Court GRANTS Plaintiff's Motion for Preliminary Injunction.

2. By not later than October 26, 2000, Plaintiff shall submit a proposed injunction.

3. By not later than November 2, 2000, Defendant shall submit any objections to Plaintiff's proposed injunction.

IT IS SO ORDERED.

---

6. Even if a photo of the car were published, it would have less persuasive power to a prospective buyer than the "real thing," because used car buyers are wary enough to begin with and are not likely to be impressed by a picture.

7. Although the parties cited no cases discussing the constitutionality of "car for sale" restrictions, this Court notes that the Court of Appeals of Wisconsin affirmed the trial court's grant of summary judgment — finding a Milwaukee ordinance banning "For Sale" signs on vehicles parked on "any highway" unconstitutional — and stated that:

" Because the restriction is disproportional and way beyond that necessary for the claimed interest of traffic safety, both the statute and the ordinance are unconstitutional violations of Blondis', and for that matter, every motor vehicle owner's, limited constitutional commercial free speech rights." *City of Milwaukee v. Blondis,* 157 Wis.2d 730, 460 N.W.2d 815, 818 (1990).