*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0237P (6th Cir.)
File Name: 04a0237p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

———————————

MICHAEL ANTHONY
CAPOBIANCO, D.C.,
    *Plaintiff-Appellant,*

    *v.*

PAUL SUMMERS, Attorney
General, in his official
capacity as Attorney General
of the State of Tennessee;
TENNESSEE BOARD OF
CHIROPRACTIC EXAMINERS,
    *Defendants-Appellees.*

No. 02-5756

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 02-00063—Robert L. Echols, Chief District Judge.

Argued: December 10, 2003

Decided and Filed: July 23, 2004

Before: BOGGS, Chief Judge; BATCHELDER and
SUTTON, Circuit Judges.

———————————

———————————

**COUNSEL**

**ARGUED:** Douglas R. Pierce, KING & BALLOW, Nashville, Tennessee, for Appellant. Sue A. Sheldon, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, for Appellees. **ON BRIEF:** Douglas R. Pierce, Alexander J. Passantino, KING & BALLOW, Nashville, Tennessee, for Appellant. Sue A. Sheldon, OFFICE OF THE ATTORNEY GENERAL, Nashville, Tennessee, for Appellees.

———————————

**OPINION**

———————————

ALICE M. BATCHELDER, Circuit Judge. Plaintiff-Appellant Michael Capobianco appeals the district court's order denying a preliminary injunction to prevent the defendants from enforcing TENN. COMP. R. & REGS. § 0260-2-.20(6)(a) ("the Rule") during the pendency of this action challenging the Rule's constitutionality. Because we conclude that the district court did not err in holding that the factors the court was required to consider in deciding this motion weigh in favor of the defendants, we affirm the order of the district court.

### BACKGROUND

Michael Anthony Capobianco, Doctor of Chiropractic, ("Capobianco") resides in Texas but has obtained a Tennessee Chiropractic license and intends to practice in Tennessee. To that end, Capobianco intends for his employees or agents to solicit recent traffic accident victims in the State of Tennessee to encourage them to seek chiropractic treatment at his offices. A regulation promulgated by the Tennessee Board of Chiropractic Examiners, the licensing board for all

practitioners of chiropractic in Tennessee, restricts such solicitations. The pertinent portion of that regulation reads: "Telemarketing or telephonic solicitation by licensees, their employees, or agents to victims of accidents or disaster shall be considered unethical if carried out within thirty (30) days of the accident or disaster, and subject the licensee to disciplinary action pursuant to T.C.A. § 63-4-114." TENN. COMP. R. & REGS. § 0260-2-.20(6)(a) (2000). While chiropractors are the only medical professionals subject to such a rule, attorneys in Tennessee are similarly prohibited from soliciting accident victims within 30 days of an accident.

Capobianco filed suit in district court, alleging that the Rule is an unconstitutional restraint on speech as well as a violation of equal protection because only chiropractors (among medical professionals) are subject to such a limitation, and seeking declaratory and injunctive relief, attorneys' fees and costs. Capobianco moved for a preliminary injunction to prevent enforcement of the Rule during the pendency of this litigation. The district court held oral argument on the motion and issued a memorandum opinion and order denying the preliminary injunction. Capobianco timely appeals from that denial.

### DISCUSSION

We review for abuse of discretion a district court's order granting or denying a preliminary injunction. *See Blue Cross & Blue Shield Mut. of Ohio v. Blue Cross and Blue Shield Ass'n*, 110 F.3d 318, 322 (6th Cir. 1997). A district court abuses its discretion when it relies upon clearly erroneous findings of fact, improperly applies the governing law, or uses an erroneous legal standard. *See id.* Generally, in considering a request for a preliminary injunction, the district court should consider (i) whether the movant is likely to succeed on the merits; (ii) whether the movant will suffer irreparable injury in the absence of an injunction; (iii) whether the injunction will cause substantial harm to others; and (iv)

whether the injunction would serve the public interest. *See Washington v. Reno*, 35 F.3d 1093, 1099 (6th Cir. 1994).

These factors are not prerequisites but instead must be balanced. *See Dayton Area Visually Impaired Persons, Inc. v. Fisher*, 70 F.3d 1474, 1480 (6th Cir. 1995). We have repeatedly noted that the first factor is frequently dispositive in the First Amendment context. *See Deja Vu of Nashville, Inc. v. Metro Gov't of Nashville & Davidson County, Tenn.*, 274 F.3d 377, 400 (6th Cir. 2001); *Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998); *Newsom v. Norris*, 888 F.2d 371, 378 (6th Cir. 1989). The district court found that Capobianco was unlikely to succeed on the merits of either his First Amendment or Equal Protection challenge, and that while Capobianco was unlikely to suffer irreparable harm in the absence of an injunction, the issuance of the injunction was likely to cause harm to others and would not serve the public interest.

### I. Capobianco's First Amendment Challenge.

On appeal, the parties agree—as they did before the district court—that the standard governing Capobianco's First Amendment challenge to this rule regulating commercial speech is the intermediate scrutiny test set forth in *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557 (1980). The Supreme Court summarized this test in *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 624 (1995), in which the Court upheld the constitutionality of Florida Bar rules prohibiting attorneys from contacting, directly or indirectly, accident victims or their relatives for the purposes of soliciting their business for a period of 30 days following an accident. *Central Hudson*, the Court said, permits the regulation of commercial speech "if the government satisfies a test consisting of three related parts: First, the government must assert a substantial interest in support of its regulation; second, the government must demonstrate that the restriction on commercial speech directly and materially advances that interest; and third, the regulation

must be narrowly drawn." *Id.* (internal quotation marks omitted).

The *Florida Bar* Court agreed with the Bar that the State has a substantial interest in protecting "the privacy and tranquility of personal injury victims and their loved ones against intrusive, unsolicited contact by lawyers." *Id.* at 624-25. Importantly, the Court recognized that the regulation at issue there was designed as well to establish standards regulating the practice of law and protecting the reputation of the legal profession, and states have a "compelling interest in the practice of professions within their boundaries, and . . . broad power to establish standards for licensing practitioners and regulating the practice of professions." *Id.* (quoting *Goldfarb v. Virginia State Bar*, 421 U.S. 773, 792 (1975)).

This circuit has held in an unpublished opinion that the State of Tennessee has a substantial interest in "protecting the privacy of accident victims, preventing overreaching by chiropractors and their agents and regulating the profession." *Silverman v. Summers*, 28 Fed. Appx. 370, 374, 2001 WL 1671072 (6th Cir. 2001). The State of Tennessee asserts the same interest in support of the Rule at issue here, and the district court held that the State's interest is substantial. We find no substantive difference between the interest asserted in *Florida Bar* and that asserted here, and we hold that the State has satisfied the first part of the *Central Hudson* test.

Next, we must address whether the Rule directly and materially advances the State's substantial interest. In *Florida Bar*, the Supreme Court reaffirmed the State's burden to present data, by way of studies or anecdotal evidence, demonstrating the harms the regulation is designed to remedy and the efficacy of the regulation in alleviating those harms. *See Florida Bar*, 515 U.S. at 626. Here, the State presented the district court with newspaper articles documenting both the solicitation of accident victims by chiropractors or their agents and the complaints and problems generated by those solicitations; declarations of individuals complaining about

having been contacted immediately after accidents by telemarketers on behalf of chiropractors; and articles from scientific and business publications covering aspects of telephone solicitation relevant to that carried out by chiropractors following accidents or disasters. We do not write on a clean slate with respect to such regulations. In *Silverman*, we reviewed the Tennessee statute that was the precursor to this Rule, which banned virtually all solicitation by chiropractors. That case included virtually the same anecdotal and periodical evidence presented in the case before us today, and we concluded that "the statute's prohibition on speech is an effective way of addressing the asserted interests." *Id*. at *4.

The district court noted that in the proceedings on the motion for a preliminary injunction, Capobianco did not challenge the Rule on the basis of the second part of *Central Hudson*'s test. Nor does his brief on appeal present any cogent challenge based on that part. Capobianco does assert, however, as part of his argument that the Rule fails the effectiveness requirement of *Central Hudson* because some chiropractors are not complying with it. Capobianco does not provide any authority for equating the existence of some scofflaws with a regulation's lack of efficacy. To the extent that Capobianco raises the second part of the *Central Hudson* test, we hold that the State has satisfied it.

Capobianco's strongest argument is based on the third part of the *Central Hudson* test, namely, that, the Rule is not narrowly drawn because chiropractic therapy is most effective if started within days of an injury and because the State has less restrictive ways of protecting the privacy of those victims and of policing the integrity of the profession than a 30-day ban on contacting the victims. We agree with the district court that when viewed in the light of the most germane authority, namely *Florida Bar* and *Silverman*, the Rule is sufficiently narrowly drawn to meet the third part of the *Central Hudson* test.

Capobianco's argument that because contacting victims quickly is important to chiropractic treatment, a 30-day time limit is not narrowly tailored, was one of the points made by the dissenting opinion in *Florida Bar*. *See Florida Bar*, 515 U.S. at 642-43 (Kennedy, J., dissenting). The district court concluded that the fact that *Florida Bar* involved a rule governing attorneys and the Rule in this case governs chiropractors was not sufficient to distinguish this case from *Florida Bar* in that respect. Indeed, as the district court noted, the majority in *Florida Bar* must have considered and rejected that precise argument. Like the district court, we find no reason to do otherwise.

In *Silverman*, we ultimately concluded that the statute failed the third part of the *Central Hudson* test because it impermissibly banned:

> Solicitation, in person or by live telephone contact, by a licensee, or by an agent, servant, employee, or independent contractor of a licensee, of a patient with whom a licensee has no family or prior professional relationship; however, this shall not prohibit solicitation by targeted direct mail advertising or other forms of written, radio, or television advertising; provided, that the advertising does not involve coercion, duress, or harassment and is not false, deceptive or misleading.

TENN. CODE. ANN. § 63-4-114(5); *see Silverman,* 2001 WL 1671072 at *2. Chief among the reasons for our decision was the fact that the statute contained no time limit at all on the restriction of access to accident victims by chiropractors or their agents. *See id.* at *5. We also noted that the imposition of criminal sanctions weighed against the constitutionality of the regulation. *See id.*

Here, Tennessee has corrected those problems. This Rule limits the restriction on telemarketing or telephonic solicitation of any accident victim to the 30-day period following the accident. And the Rule contains no criminal

sanction but simply subjects the licensee on whose behalf the solicitation is made to disciplinary action. *See* TENN. COMP. R. & REGS. § 0260-2-.20(6)(a). The Supreme Court has made it clear that in the context of commercial speech, *Central Hudson*'s "narrowly drawn" requirement does not mean that the regulation employs the "least restrictive means" to achieve its end. *Florida Bar*, 515 U.S. at 632 (citing *Board of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989)). We think this time limit, identical to that in *Florida Bar*, and this sanction, are sufficiently narrow to satisfy the third part of the *Central Hudson* test.

We hold that the district court did not err in concluding that Capobianco has demonstrated little likelihood of succeeding on the merits of his First Amendment challenge to TENN. COMP. R. & REGS. 0260-2-.02(6)(a).

## II.   Capobianco's Equal Protection Challenge.

Capobiano also challenges the Rule under the Fourteenth Amendment's Equal Protection clause. The Equal Protection clause guarantees that no State shall "deny to any person within its jurisdiction the equal protection of the laws," a guarantee that the Supreme Court has characterized as a requirement that "all persons similarly situated . . . be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing U.S. CONST. amend. XIV.). Reviewing an equal protection challenge to a Kentucky statute prohibiting attorneys or their agents from soliciting accident victims within 30 days of their accidents, we held that if a regulation impacting speech is content-neutral such as a time, place, or manner restriction, then we utilize intermediate scrutiny. *See Chambers v. Stengel*, 256 F.3d 397, 401 (6th Cir. 2001). Commercial speech restrictions, we said, will "survive constitutional assessment if the implicated measure was narrowly fashioned to further a significant governmental interest." *Id.* (quoting *Grider v. Abramson*, 180 F.3d 739, 748 (6th Cir. 1999)). And we went on to hold that "[b]ecause regulation of commercial speech is subject to

intermediate scrutiny in a First Amendment challenge, it follows that equal protection claims involving commercial speech also are subject to the same level of review." *Id.* (citing *R.A.V. v. City of St. Paul*, 505 U.S. 377, 385 (1992)).

We have already concluded that the Rule at issue here survives First Amendment scrutiny because it satisfies the *Central Hudson* test, that is, the rule is narrowly drawn and directly and materially advances a substantial government interest. *See Central Hudson*, 447 U.S. at 564-65; *see also Florida Bar*, 515 U.S. at 624. In *Chambers*, we held that the Kentucky statute "is narrowly tailored to further substantial governmental interests and, thus, comports with the Equal Protection Clause." *Chambers*, 256 F.3d at 403. Because we see no basis for concluding that *Griders*'s "significant governmental interest" and *Central Hudson*'s "substantial" government interest are materially different, we conclude that this Rule also comports with the Equal Protection Clause.

But Appellant also argues that because medical doctors are not subject to such a regulation, the state has failed to treat them "alike." The district court noted, and we agree, that because there is no single instance in the record of a medical doctor contacting an accident victim within 30 days of an accident, or any complaint by someone with reference to such a contact, if Tennessee were to enact a parallel regulation for medical doctors, it "would be implementing a solution to a nonexistent problem." The Equal Protection Clause does not require that the state treat all persons alike. It requires only that the state treat similarly situated persons alike, and that where the state distinguishes between classifications of persons, the distinction must "have some relevance to the purposes for which the classification is made." *Chambers*, 256 F.3d at 401 (quoting *Baxstrom v. Herold*, 383 U.S. 107, 111 (1966)). Here, the State has distinguished between medical professionals who have a record of engaging in a particular conduct that generates complaints about matters in which the state has a substantial interest, and medical professionals who do not. We conclude that the district court

did not err in holding that Capobianco is unlikely to succeed on the merits of his Equal Protection challenge to the Rule.

The district court held that the other factors the court is required to balance in reviewing a demand for a preliminary injunction weigh in favor of the State. Inasmuch as Capobianco does not present any argument with regard to these elements of the district court's ruling, we will not address them. Accordingly, we hold that the district court did not abuse its discretion in denying Capobianco's request for a preliminary injunction.

### CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.