RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 06a0170p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

CHRISTOPHER J. PAGAN,

    *Plaintiff-Appellant,*

  *v.*

POLICE CHIEF MATT FRUCHEY, and VILLAGE OF
GLENDALE, OHIO,

    *Defendants-Appellees.*

No. 04-4414

---

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 03-00541—Sandra S. Beckwith, Chief District Judge.

Submitted:  November 29, 2005

Decided and Filed:  May 19, 2006

Before:  SILER and GRIFFIN, Circuit Judges; TARNOW, District Judge.[*]

---

**COUNSEL**

**ON BRIEF:**  Noah E. Powers II, REPPER, POWERS & PAGAN, LTD., Middletown, Ohio, for
Appellant.  Lawrence Edward Barbiere, SCHROEDER, MAUNDRELL, BARBIERE & POWERS,
Cincinnati, Ohio, for Appellees.

   GRIFFIN, J., delivered the opinion of the court, in which SILER, J., joined.  TARNOW, D.
J. (pp. 7-11), delivered a separate dissenting opinion.

---

**OPINION**

---

   GRIFFIN, Circuit Judge.  Christopher J. Pagan appeals the entry of a summary judgment in
district court dismissing his action against the Village of Glendale ("Village") and Police Chief Matt
Fruchey ("Chief Fruchey").  Pagan's claims arose out of a Village ordinance proscribing a resident's
ability to display a for-sale sign on a vehicle parked on a public street.  Pagan contends the Village
ordinance unconstitutionally infringes on his First Amendment right to display a vehicle for-sale
sign in the public street.  We disagree and affirm.

---

[*]The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of Michigan, sitting by
designation.

1

I.

The facts giving rise to this case are not in dispute. Pagan is a resident of the Village of Glendale, Ohio, and a practicing lawyer in Middleton. He was given a blue 1970 Mercury Cougar as partial payment for his work on a case and hoped to sell it for its $3,000 appraised value. Attempts to sell the vehicle through a local newspaper and a classic car website failed, and, as a result, Pagan placed a sign on the vehicle and parked it on a public road in front of his home some time in July 2003.

On or around July 21, 2003, a Village police officer noted the sign and informed Pagan that it was illegal pursuant to Village ordinance § 76.06 (hereinafter "the Ordinance" or "§ 76.06"). In response, Pagan sent an email to Chief Fruchey requesting a copy of the Ordinance and noting that, in his opinion, the Ordinance could be a violation of his First Amendment rights. Chief Fruchey then personally investigated the matter, confirmed that Pagan's car was parked in violation of § 76.06, and left a copy of the Ordinance with Pagan's wife. Section 76.06 of the Glendale Traffic Code provides as follows:

> It shall be unlawful for any person to stand or park any vehicle, motorized or towed, upon any public or private street, road, or highway within the village or upon any unimproved privately owned area within the village for the purpose of:
>
> (A)    Displaying it for sale, except that a homeowner may display a motor vehicle, motorized or towed, for sale only when owned and titled to said homeowner and/or a member of said household, and only when parked upon an improved driveway or apron upon the owner's private property.
> (B)    Washing, maintaining or repairing such vehicle except repairs necessitated by an emergency.
> (C)    Any advertising.

On or around July 23, 2003, Pagan sent another email to Chief Fruchey proposing that the Village allow him to leave the for-sale sign on his car for an additional three weeks. Pagan indicated that, should the Village be amenable to his proposal, he would refrain from filing suit in federal court seeking to have the Ordinance declared unconstitutional. One day later, Chief Fruchey declined Pagan's offer, via email, and informed him that a citation would issue unless Pagan complied with the Ordinance. Pagan thereafter removed the for-sale sign and, as a result, did not receive a citation.

Pagan filed suit in the Southern District of Ohio on July 30, 2003, naming Chief Fruchey and the Village as defendants. In his complaint, Pagan asserted that (1) the Ordinance violated his First Amendment constitutional rights, (2) the Ordinance violated his rights pursuant to the equal protection and due process clauses of the Constitution, and (3) the Village and Chief Fruchey's actions deprived Pagan of certain rights in violation of 42 U.S.C. § 1983. Finally, Pagan sought a declaration from the court that the Ordinance is unconstitutional and requested, *inter alia*, injunctive relief and $5,000 of compensatory damages.

The parties then filed cross-motions for summary judgment. Pagan's motion withdrew his request for injunctive relief and narrowed his constitutional claim solely to whether the Ordinance violated his First Amendment rights.[1] In response, the district court issued an order dated September 30, 2004, granting the Village's motion for summary judgment and finding the Ordinance

---

[1] Pagan further argued that Chief Fruchey was not immune from Pagan's § 1983 claims. The district court noted that such an argument "borders on frivolity" and dismissed it. Pagan does not renew his § 1983 arguments on appeal.

constitutional. In doing so, the court, as a preliminary matter, found that Pagan possessed standing to challenge the Ordinance despite the fact that he was not cited. The court specifically stated that "[w]hile the potential monetary loss here appears to be relatively minor, a threatened fine of not more than $100 plus a possible invasion of First Amendment rights are clearly a 'cognizable injury.'"

The court thereafter substantively analyzed the constitutionality of § 76.06. At the outset, the court found that because Pagan's claims involved "commercial speech," the Supreme Court's decision in *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York*, 447 U.S. 557 (1980), set forth the appropriate legal framework. As the court noted, *Central Hudson* sets forth a four-part test wherein a court must determine: (1) whether the expression is protected by the First Amendment, (2) the governmental interest for regulating speech, (3) whether the regulation directly advances the governmental interest asserted, and (4) whether the regulation is not more extensive than is necessary to serve the governmental interest. With that test in mind, the court noted that the first two *Central Hudson* steps were not in dispute; indeed, the parties agree that the for-sale sign constitutes commercial speech and the sign is a lawful activity that is not misleading. Accordingly, the court moved on to evaluating Pagan's for-sale sign in the context of the final two *Central Hudson* factors.

The court preliminarily observed that the Village asserted that it promulgated the Ordinance to promote traffic safety and prevent people from being in public roads unless they are part of the traffic flow. The court likewise noted that, as a secondary concern, the Village Ordinance sought to promote aesthetic objectives. Although Pagan conceded below that traffic safety is a substantial governmental interest, he nonetheless asserted that the Village's evidence does not reflect that the Ordinance furthers that interest. In particular, Pagan asserted that Chief Fruchey's affidavit was not sufficient to carry the Village's burden. The court, in response, disagreed and stated that "[i]t seems self-evident that Traffic Ordinances in general, and the Glendale Ordinance in particular, are directly related to traffic control and safety. This Ordinance undoubtedly advances those interests by trying to keep people out of busy streets."

Pagan nonetheless further contended that vehicle for-sale signs do not pose an actual traffic safety problem. For support, Pagan noted the Village's failure to adduce extrinsic evidence in the form of, for example, traffic studies to support its conclusion and its further failure to regulate home for-sale signs and the like which may also pose traffic safety problems. Again, however, the court was not persuaded; "[t]he fact that Plaintiff may believe that the ordinance does not go far enough or fails to regulate other types of 'dangers' to traffic control or safety is irrelevant to the constitutional analysis of the ordinance."

Moreover, the court observed, it is not the role of a court to second-guess the Village's decision regarding appropriate traffic safety ordinances. Thus, given that Pagan offered "nothing more than his own speculation and subjective conclusions to argue that Glendale's legislative judgment is unreasonable, or even palpably false[,]" the court upheld the Ordinance as constitutional.

This appeal followed.

## II.

We review the district court's entry of summary judgment de novo. *McWane, Inc. v. Fid. & Deposit Co. of Md.*, 372 F.3d 798, 802 (6th Cir. 2004). Summary judgment is proper when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). A genuine issue for trial exists only when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 252 (1986); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (noting that, in deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party).[2]

III.

Pagan argues that the district court improperly excused the Village from setting forth any evidence to demonstrate that the Ordinance actually furthers a significant governmental interest. Moreover, Pagan contends, the district court failed to appreciate the significance of the Village's failure to prohibit signs other than for-sale signs. Thus, Pagan concludes, "there is no evidence that vehicle and pedestrian safety has ever been jeopardized by vehicle for-sale signs, [and as a result] any harm is merely hypothetical, and cannot be relied upon to burden truthful speech."

As Pagan's arguments reflect, the heart of this appeal presents the question, pursuant to *Central Hudson*, of whether the Ordinance "directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest."[3]  447 U.S. at 566. Commercial speech is properly restricted if the government (1) asserts a substantial interest "in support of its regulation," (2) "demonstrate[s] that the restriction on commercial speech directly and materially advances that interest[,]" and (3) draws the regulation narrowly. *Capobianco v. Summers*, 377 F.3d 559, 562 (6th Cir. 2004) (quoting *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 624 (1995)).

Pursuant to the foregoing standards, the Village's Ordinance is constitutional. First, the Village has asserted two independent substantial interests; namely, traffic safety and aesthetics. We have previously recognized that traffic safety is a substantial interest in support of regulating the placement of signs nearby roadways. *See Prime Media, Inc. v. City of Brentwood*, 398 F.3d 814, 823 (6th Cir. 2005) ("[B]illboard regulations, whatever other strengths and weaknesses they may have, advance a police power interest in curbing community blight and in promoting traffic safety." (citations omitted)); *accord Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 508-09 (1981) ("Nor can there be substantial doubt that the twin goals that the ordinance seeks to further – traffic safety and the appearance of the city – are substantial governmental goals."). We have also specifically approved of aesthetics as a substantial interest in regulating commercial speech. *See Rzadkowolski v. Village of Lake Orion*, 845 F.2d 653, 655 (6th Cir. 1988) (holding that regulations restricting billboards to an industrial district and permitting only on-premises signs in the business district "promote significant and legitimate aesthetic interests which enhance property values and psychological well-being for individuals and families"). Accordingly, the Village's asserted interests in regulating the placement of for-sale signs in automobiles parked in public streets are valid.

Second, the Village has demonstrated that the restriction on commercial speech directly and materially advances its asserted governmental interests. The Affidavit of Chief Fruchey explains that "[t]he objective of the Ordinance is to prohibit attractions or activities which will induce people to come into the roadway who are not a part of normal vehicular or pedestrian traffic, such as individuals washing or repairing their cars which are parked on the street, or individuals who are looking over a motor vehicle which is displaying a for sale sign parked on the street." By

---

[2]On appeal, the Village does not raise the potential issues of lack of standing (Pagan did not receive a citation) or mootness (Pagen has now sold the vehicle). We choose to address only the issues that have been preserved and argued.

[3]Notably, the "framework for analyzing regulations of commercial speech [] is 'substantially similar' to the test for time, place, and manner restrictions." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 554 (2001) (quoting *Bd. of Trs. of State Univ. of New York v. Fox*, 492 U.S. 469, 477 (1989)).

eliminating an individual's ability to advertise, wash their car, or display a for-sale sign on a public street, the Ordinance directly promotes traffic safety.

Pagan nonetheless argues that the Village presented insufficient evidence to demonstrate that the Ordinance promotes public safety. The Supreme Court has, however, previously made clear that "[i]f the city has a sufficient basis for believing that billboards are traffic hazards and are unattractive, then obviously the most direct and perhaps the only effective approach to solving the problems they create is to prohibit them." *Metromedia,* 453 U.S. at 508. It is self-evident that the same rationale applies to a for-sale sign like the one at issue here. *Accord Wheeler v. Comm'r of Highways*, 822 F.2d 586, 595 (6th Cir. 1987) ("Although the record in the present case contains little evidence regarding Kentucky's interests in traffic safety, we conclude that the interest in promoting the recreational value of public travel and preserving natural beauty along interstate highways is substantial and sufficient to support the content neutral restrictions.").

The final remaining question is whether the Ordinance is not more extensive than is necessary to serve the asserted governmental interest. "[A] regulation is not more extensive than necessary when it is a reasonable fit between the ends directly advanced by the statute and the means chosen as embodied in the regulation." *Discovery Network, Inc. v. Cincinnati*, 946 F.2d 464, 467 (6th Cir. 1991) (citing *Bd. of Trs. of State Univ. of New York v. Fox*, 492 U.S. 469, 480 (1989)), *aff'd*, 507 U.S. 410 (1993). This does not require that the means chosen be the least restrictive means. *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 556 (2001). "The degree to which speech is suppressed – or alternative avenues for speech remain available – under a particular regulatory scheme tends to be case specific." *Id*. at 563 (citation omitted).

In this case, it bears noting that, because the Ordinance is designed to regulate potential safety hazards – persons occupying the roadway and distracted motorists – § 76.06 has only an incidental impact on speech.[4] *Cf. City of Ladue v. Gilleo*, 512 U.S. 43, 48 (1994) ("Unlike oral speech, signs take up space and may obstruct views, distract motorists, displace alternative uses for land, and pose other problems that legitimately call for regulation."). Perhaps more importantly, several alternative channels of speech remain available to Pagan. Indeed, as the Village notes, the Ordinance impacts *only* public streets – not driveways or other private property. For these reasons, we hold that the Ordinance is a constitutional exercise of the Village's regulatory power.[5]

---

[4] Pagan argues that the Ordinance is both unconstitutionally over and under inclusive. He contends that § 76.06 is over-inclusive because "the ordinance prohibits only for-sale signs on vehicles situate[sic] in the street; it excludes from prohibition for-sale signs on vehicles situate[sic] in driveways or private property." That argument overlooks the above authority, which notes the Supreme Court's observation that if a city has a sufficient basis for believing that for-sale signs are a traffic hazard and are unattractive, "then obviously the most direct and perhaps the only effective approach to solving the problems they create is to prohibit them." *Metromedia,* 453 U.S. at 508.

Pagan further claims the Ordinance is under-inclusive because it "permits signage that is just as problematic as vehicle for-sale signs, and it denies a right to Pagan that it expressly permits to many others." However, the "reasonable fit" analysis required by *Central Hudson* does not require that the means chosen by the Village be the least restrictive means. *Reilly*, 533 U.S. at 556.

[5] Throughout these proceedings, Pagan has relied extensively on *Burkow v. City of Los Angeles*, 119 F. Supp. 2d 1076 (C.D. Cal. 2000), which granted a preliminary injunction preventing the city from enforcing against the plaintiff an ordinance containing language strikingly similar to § 76.06. Addressing the third *Central Hudson* factor, the district court concluded that the ordinance failed to directly advance the asserted governmental interests of traffic safety and aesthetics. *Id*. at 1080. In particular, the court noted that "the City has presented no studies or even anecdotal evidence, and 'not even [Plaintiff]'s own conduct suggests that [Defendant]'s concerns are justified.'" *Id*. (citing *Edenfield v. Fane*, 507 U.S. 761, 770-71 (1993)). Addressing the fourth *Central Hudson* factor, the court concluded that insufficient alternative channels of speech remained available to plaintiff. *Id*. at 1082.

*Burkow* is a district court decision from another jurisdiction which, in our view, was wrongly decided. Moreover, the opinion is contrary to the weight of the above-cited authority. Indeed, a court should approach the idea

Affirmed.

---

of invalidating a local ordinance with caution, particularly if there is no suggestion that the government's promulgation of the ordinance was "palpably false." *See Railway Express Agency, Inc. v. New York*, 336 U.S. 106, 109 (1949). As for the *Burkow* court's concern that the city presented no evidence, the district court in this case properly held that no evidence in the form of studies or other anecdotal evidence was necessary. Indeed, as the district court noted, the Ordinance "undoubtedly advances those interests [in promoting traffic safety and aesthetics] by trying to keep people out of busy streets." Such a conclusion is consistent with Supreme Court jurisprudence. *See Metromedia*, 453 U.S. at 509 ("We likewise hesitate to disagree with the accumulated, common-sense judgments of local lawmakers and of the many reviewing courts that billboards are real and substantial hazards to traffic safety.").

———————

**DISSENT**

———————

ARTHUR J. TARNOW, District Judge, dissenting. The majority concludes that the Village of Glendale's traffic ordinance is constitutional pursuant to case law addressing the impact of billboards on traffic safety and aesthetics. I might agree with the majority's decision, if the sign at issue were in fact a billboard. However, the sign at issue was not a billboard, but rather a small "For Sale" sign on the passenger and sidewalk side of a parked car. I believe that the Village failed to carry its burden of demonstrating that the ordinance is constitutional. Therefore, I dissent.

"It is well established that the party seeking to uphold a restriction on commercial speech carries the burden of justifying it." *Edenfield v. Fane*, 507 U.S. 761, 770 (1993); *see also Thompson v. Western States Medical Center*, 535 U.S. 357, 373 (2002). The rationale for placing the burden of justifying commercial speech restrictions on the government is that "[i]f the First Amendment means anything, it means that regulating speech must be a last–not first–resort." *Thompson*, 507 U.S. at 770.

There is no dispute that Appellant's speech was entitled to constitutional protection because it concerned lawful activity and was not misleading. There is also no dispute that the Village has articulated "substantial" interests, namely, safety and aesthetics, in support of its regulation.

Under the third prong of the *Central Hudson* test, Glendale bears the burden of proving that the ordinance directly advances its asserted interests. *Edenfield*, *supra* at 770. "This burden is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Id*. at 770-71; *see also Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 555 (2001).

The district court held that the ordinance was supported by common sense, and that Pagan "offer[ed] nothing more than his own speculation and subjective conclusions to argue that Glendale's legislative judgment is unreasonable, or even 'palpably false.'" Thus, the district court placed the burden of disproving the basis for the Glendale ordinance on Pagan, rather than placing the burden of justifying the speech restriction on the Village.

The district court erred in shifting the burden of proof to Pagan, rather than requiring the Village to come forward with some evidence to justify its restriction of commercial speech. *See Edenfield* and *Thompson, supra*.

As to the quantum of evidence needed to support a regulation of speech, this Court has held:

> A municipality is not required to conduct new studies or produce evidence independent of that already generated by other cities to demonstrate the problem of secondary effects, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses.

*Bronco's Entertainment v. Charter Township of Van Buren*, 421 F.3d 440, 451 (6th Cir. 2005) (internal quotations and citations omitted) (holding that memoranda prepared by a community planning and urban design firm, which cited studies showing that sexually oriented businesses are associated with increased crime and reduced property values, were sufficient to support the ordinance).

There is no evidence in the record supporting the Village's assertion that § 76.06 promotes public safety by keeping pedestrians out of the street or preventing distractions to motorists. *See Bronco's Entertainment, supra* at 451 (City is not required to produce *new and independent evidence*, so long as "whatever *evidence* the city relies upon is reasonably believed to be relevant to the problem that the city addresses.") (emphasis added). § 76.06 is not supported by any findings or evidence, new or old, demonstrating that any pedestrians or motorists were injured, or could be injured, while inspecting vehicles displayed for sale on the streets of Glendale.

Unlike the memoranda at issue in *Bronco's Entertainment, supra*, there is no evidence which could reasonably be believed to be relevant to the problem that the city addresses. The only evidence presented is in the form of speculation and conjecture. Under *Edenfield* and *Thompson*, such evidence is insufficient to satisfy the Village's burden.

Given the lack of evidence supporting § 76.06, Glendale argues that the Ordinance should be upheld so long as it is not "manifestly unreasonable." According to Glendale, "the District Court properly analyzed this issue under the case law governing traffic ordinances and zoning resolutions relating to billboards and signs and their effect on traffic control and safety." Glendale takes the position that when the harms recited by the municipality are a matter of common sense, Courts are not required to demand more extensive proof that the harms are real or empirically proven.

Generally, the Supreme Court has "recognized that state interests in traffic safety and esthetics may justify zoning regulations for advertising." *Lorillard*, 533 U.S. at 551 (citing *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507-08 (1981)).

In *Metromedia, supra*, the Supreme Court affirmed San Diego's billboard restrictions despite a meager factual record showing a connection between billboards and traffic safety. The Court "hesitate[d] to disagree with the accumulated, commonsense judgments of local lawmakers and of the many reviewing courts that billboards are real and substantial hazards to traffic safety." *Metromedia*, 453 U.S. at 508-09.

I agree that the accumulated judgments of local governments concerning billboard regulations are entitled to judicial deference. However, deference has its limits, since "the First Amendment...does not permit municipalities to regulate methods of expression however, whenever, and wherever they wish." *Prime* Media, 398 F. 3d at 818.

In this case, there is no accumulation of evidence or judgments concerning the dangers posed by "For Sale" signs on parked cars. There is no evidence in the record concerning the effectiveness of § 76.06 at alleviating the asserted dangers. Therefore, § 76.06 warrants closer scrutiny. *See Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 624 (1995) (citing *Edenfield*, 507 U.S. at 761) ("Unlike rational basis review, the *Central Hudson* standard does not permit us to supplant the precise interests put forward by the State with other suppositions.")

The majority cites the Supreme Court's decision in *City of Ladue v. Gilleo*, 512 U.S. 43 (1994), where the Court held that:

> [Signs can] pose distinctive problems that are subject to municipalities' police powers. Unlike oral speech, signs take up space and may obstruct views, distract motorists, displace alternate uses for land, and pose other problems that legitimately call for regulation. It is common ground that governments may regulate the physical characteristics of signs–just as they can, within reasonable bounds and without censorial purpose, regulate audible expression in its capacity as noise.

*Id*. at *13 (citing *Gilleo*, 512 U.S. at 48).

I agree that the power of regulating the physical characteristics of signs, and especially billboards, properly rests with local governments. However, that power does not extend so far as to authorize the application of § 76.06 in the manner urged in this case. The Ordinance does not regulate the physical characteristics of "For Sale" signs, but rather bans a subset of such signs outright.

There is no common sense connection between Glendale's restriction of commercial speech and pedestrian safety. Glendale's common sense argument is not made in light of a "long history" or "substantial consensus" showing that "For Sale" signs imperil public safety. Glendale's argument rests only on the speculation and conjecture of its police chief.

Common sense dictates that if the City of Glendale were aware of even a single incident in which a pedestrian were injured while inspecting a vehicle which displayed a "For Sale" sign in the corner of the windshield, such incident would be cited in the pleadings. Without any evidence to suggest that there is an actual danger presented by the display of "For Sale" signs, there is not a sufficient justification for the Village's speech restriction.

Glendale's un-supported assertion that its ordinance is justified by common sense is insufficient to justify its regulation of commercial speech. This is especially true since the ordinance, as applied to Pagan, leaves the seller with no alternative channel for communicating their commercial message. Therefore, I would reject Glendale's argument that the burden on local governments to produce evidence in support of commercial speech restrictions should be relieved where the government simply asserts that there is a "common sense" justification for the restriction.

Under the Fourth Prong of the *Central Hudson* test, Glendale bears the burden of showing that § 76.06 is not "substantially broader than necessary to protect [its] interest." *Prime Media, Inc. v. City of Brentwood*, 398 F. 3d at 822 (6th Cir. 2005) (quoting *Members of City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 808 (1984)). In other words, the Village "may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals." *Ward v. Rock Against Racism*, 491 U.S. 781, 799-800 (1989) (citing *Frisby v. Schultz*, 487 U.S. 474, 485 (1983)).

The Village is not required to eliminate all less-speech-restrictive alternatives. *Prime Media*, 398 F.3d at 819-20. However, "if there are numerous and obvious less-burdensome alternatives to the restriction on commercial speech, that is certainly a relevant consideration in determining whether the 'fit' between ends and means is reasonable." *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 418 n. 13 (1993).

Glendale's traffic ordinance is targeted at the problems of traffic safety, pedestrian safety, and aesthetics. However, § 76.06 is not a "reasonable fit" for the asserted safety concerns.

First, the plain language of the Ordinance reveals that there are numerous and obvious less-burdensome alternatives to the ban on "For Sale" signs. Subsection (B) of the Ordinance prohibits washing or repairing vehicles in the roadway, without any impact on commercial speech. Just as the ordinance prohibits washing or repairing a vehicle in the roadway, so could it prohibit pedestrians from entering the roadway for the purpose of inspecting a vehicle. It is obvious that the Village could directly address the asserted problems without any impact on commercial speech. Instead, the Village has imposed a complete ban on commercial speech, without any evidence of a connection between the speech and the asserted dangers. Therefore, § 76.06 is substantially broader than necessary to protect the Village's interests.

As to the distraction of passing motorists, there is no meaningful distinction between regulated and un-regulated vehicles. Passing motorists are just as likely to have their attention diverted by "For Sale" signs attached to cars parked in driveways, or by the display of business

names or addresses, which Glendale concedes would be permitted under the Ordinance. Therefore, the Village has failed to sustain its burden of showing that these dangers distinguish regulated vehicles from non-regulated vehicles.

In addition, only "For Sale" signs on parked vehicles are prohibited, while "For Sale" signs on moving cars are allowed. There is no reasonable reason to believe that a sign posted in a parked car is any more dangerous than a sign posted in a moving car. This is especially true as applied to Pagan, since his "For Sale" sign was on the curb side of a parked car.

Also, Glendale has not shown a reasonable connection between the ordinance and the preservation of aesthetic values. "For Sale" signs and cars exhibited for the purpose of advertising may be an eyesore whether they are standing on private property, parked on the street, or being driven on the road. They are no more aesthetically harmful than the business advertisements permitted under the Ordinance. In fact, car owners in Glendale could adorn their parked vehicles with whatever signs they wished, no matter how distracting, so long as the signs did not indicate that the parked vehicle was "For Sale."

As applied to Pagan, the sign posted in his car did not pose any threat to aesthetics, pedestrian safety, or traffic safety. Pagan's "For Sale" sign was posted in the lower right hand corner of the car's front windshield, that is, on the curb side of the vehicle. § 76.06 is unreasonably broad to the extent that it seeks to preserve traffic safety by allowing "For Sale" signs on moving cars as well as virtually any other signs on parked cars, while criminalizing "For Sale" signs that are posted only on the curb side of a parked vehicle.

Finally, § 76.06 is substantially broader than necessary because it imposes a wholesale ban on an inexpensive and autonomous method of communication and leaves individual sellers without viable alternatives for communicating their commercial messages. In *Linmark Associates, Inc. v. Township of Willingboro*, 431 U.S. 85 (1977), the Supreme Court struck down a municipal ban on "For Sale" and "Sold" signs in front yards. The Court observed:

> Although in theory sellers remain free to employ a number of different alternatives, in practice reality is not marketed through leaflets, sound trucks, or the like. The options to which sellers realistically are relegated–primary newspaper advertising and listing with real estate agents–involve more costs and less autonomy than "For Sale" signs; are less likely to reach persons not deliberately seeking sales information; and may be less effective media for communicating the message that is conveyed by a "For Sale" sign in the front of the house to be sold. The alternatives, then, are far from satisfactory.

*Linmark*, 431 U.S. at 93

In *Cleveland Area Board of Realtors v. City of Euclid*, 88 F.3d 382 (6th Cir. 1996), this Court invalidated a city ordinance that banned the display of all yard signs, with an exception for signs displaying the residents' name and address and pertinent security system information. We concluded that

> by banning yard signs altogether, with an exception only for a minimal amount of information necessary for safety and security reasons, the government burdened substantially more speech than necessary, because it completely foreclosed an inexpensive and autonomous way to communicate.

*Id.* at 388.

In this case, Glendale has not satisfied its burden to demonstrate narrow-tailoring because § 76.06 completely barred Pagan from communicating his commercial message. The prohibition on standing or parking vehicles in the street for the purpose of displaying them for sale applies to all vehicles, on all streets, and at all times, without any showing that such vehicles are dangerous. As applied to Pagan, who does not own a driveway fronting a public street, § 76.06 functioned as a complete ban on commercial expression. Thus, the Ordinance is not narrowly tailored.

The majority correctly notes that the test for commercial speech regulations is substantially similar to the test for time, place, and manner restrictions. However, it should be noted that the Ordinance fails one critical aspect of the time, place, and manner test because it is not content neutral.

Section 76.06 is not content neutral because whether any particular vehicle on the streets of Glendale falls within the ban is determined by the content of the sign on the vehicle and/or the purpose for which it is placed in the street.

The ordinance prohibited Pagan from placing a small "for sale by owner" sign in the window of his car. However, the ordinance would not have prohibited Pagan from standing or parking his car in the street for the purpose of displaying a large, distracting sign which endorsed a candidate for public office. In other words, the ordinance does not apply equally across categories, such as "music, political speech, and advertising." *Discovery Network*, supra at 428 (citation omitted). On its face, § 76.06 targets only commercial speech, and therefore does not satisfy the requirement that commercial and non-commercial speech be treated alike.

In addition, the district court's memorandum and order clarified that the ordinance is not content neutral as to the type of advertising targeted for regulation. Under the construction of the ordinance accepted by the district court, § 76.06 allows all businesses to display their names or addresses on the sides of vehicles owned and used by those businesses. The distinction between advertisements for businesses and "For Sale" signs by individual sellers proves that § 76.06 is a content-based speech regulation.

§ 76.06 is not content neutral because it targets only commercial speech, and discriminates against a specific form of commercial speech; namely, "For Sale" signs. Therefore, § 76.06 is not a valid time, place, and manner regulation.

For the foregoing reasons, I respectfully dissent.