86 F.3d 155
 96 Cal. Daily Op. Serv. 4161, 96 Daily Journal
D.A.R. 6738
Eduardo MEDINA; Harvey Reynolds; and George Singleton,
individually and on behalf of all others similarly
situated, Plaintiffs-Appellants,
v.
William J. CLINTON, President of the United States of
America; Department of Labor; Robert Reich,
Secretary of the Department of Labor,
Defendants-Appellees.
 No. 95-15571.
 United States Court of Appeals,
Ninth Circuit.
 Submitted May 14, 1996.*
Decided June 12, 1996.
 
 Paul Gattone, Southern Arizona People's Law Center; Nancy O'Neill, National Lawyers Guild, Southern Arizona Chapter, Tucson, Arizona, for plaintiffs-appellants.
 Sushma Soni, United States Department of Justice, Washington, DC, for defendants-appellees.
 Appeal from the United States District Court for the District of Arizona, James F. Battin, District Judge, Presiding. D.C. No. CV-94-00523-JFB.
 Before: T.G. NELSON and TASHIMA, Circuit Judges, and BURNS, District Judge.**
 TASHIMA, Circuit Judge:
 
 
 1
 Plaintiffs are three unemployed or underemployed adult males. They commenced this putative class action on behalf of themselves and others similarly situated against defendants the President of the United States of America, William J. Clinton (the "President"), the Department of Labor and the Secretary of Labor Robert Reich to compel the creation or expansion of federal job programs. The district court dismissed their action for lack of subject matter jurisdiction. We affirm.
 
 BACKGROUND
 
 2
 Plaintiffs, residents of Tucson, Arizona, allege that, despite their best efforts, they have been unable for the past several years to secure continuous, full-time work at a liveable wage. Consequently, they suffer from homelessness and from severe physiological, psychological, and social hardship. They commenced this action to require the President to comply with the provisions of the Full Employment and Balanced Growth Act of 1978 (the "Act"), Pub.L. No. 95-523, 1978 U.S.C.C.A.N. (92 Stat.) 1887 (codified, as amended, at 2 U.S.C. §§ 632, 636, 661, 661a-661f; 12 U.S.C. § 225a; and 15 U.S.C. §§ 1021-1024, 3101-3152).
 
 
 3
 In enacting this legislation, Congress declared and established "as a national goal the right to full opportunities for useful paid employment at fair rates of compensation of all individuals able, willing, and seeking to work." 15 U.S.C. § 1021(b). The Act calls for the President to transmit annually to Congress an economic report setting forth current employment trends, numerical employment goals, and a "program for carrying out the policy declared in section 1021 of this title, together with such recommendations for legislation as the President may deem necessary or desirable." 15 U.S.C. § 1022(a). See also 15 U.S.C. § 3116(a). The Act also provides for the establishment of "reservoirs" of public employment:
 
 
 4
 To the extent that individuals aged sixteen and over and able, willing, and seeking to work are not and in the judgment of the President cannot be provided with private job opportunities or job opportunities under other programs and actions in existence, in accord with the goals and timetables set forth in the Employment Act of 1946, the President shall, as may be authorized by law, establish reservoirs of public employment and private nonprofit employment projects, to be approved by the Secretary of Labor, through expansion of CETA and other existing employment and training projects or through such new programs as are determined necessary by the President or through both such projects and programs.
 
 
 5
 15 U.S.C. § 3116(c)(1).
 
 
 6
 Plaintiffs seek to enjoin the President to: (1) communicate to Congress the inadequacy of current job measures in meeting the goals and timetables of the Act; (2) recommend policies and procedures to Congress that would provide employment opportunities to plaintiffs and those similarly situated; and (3) establish reservoirs of public employment and private nonprofit projects.
 
 
 7
 Defendants moved to dismiss the action for lack of subject matter jurisdiction. Fed.R.Civ.P. 12(b)(1). Defendants argued that plaintiffs lack standing and that they improperly seek judicial review of duties committed to the discretion of the Executive Branch. The district court granted the motion and dismissed the action. This appeal followed.
 
 DISCUSSION
 
 8
 Article III of the Constitution limits the jurisdiction of the federal courts to actual "Cases" or "Controversies." U.S. Const. art III, § 2, cl. 1. "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992).
 
 
 9
 The "irreducible constitutional minimum" of standing contains three elements: (1) plaintiff must have suffered an "injury in fact"; (2) the injury must be "fairly traceable" to the challenged conduct of the defendant, and not the result of the independent action of some third party; and (3) it must be likely, as opposed to merely speculative, that the injury will be "redressed" by a favorable decision. Id. at 560-61, 112 S.Ct. at 2136. See also United Food and Commercial Workers Union Local 751 v. Brown Group, Inc., --- U.S. ----, ---- - ----, 116 S.Ct. 1529, 1533-1534, 134 L.Ed.2d 758 (1996).
 
 
 10
 Plaintiffs characterize their "injury in fact" as the "deprivation of the full opportunity to compete for jobs," an opportunity which they assert is a legally cognizable interest under the Act. The district court assumed arguendo that plaintiffs had sufficiently pleaded injury in fact. So do we.
 
 
 11
 Plaintiffs lack standing because the remedy sought would not redress their alleged injury.[1] Defendants' compliance with the Act would not "likely" increase plaintiffs' opportunities to compete for jobs.
 
 
 12
 The only power the President has under the Act is to issue reports and recommendations, see 15 U.S.C. §§ 1022(a), 3116(a), and to establish job reservoirs "as may be authorized by law." 15 U.S.C. § 3116(c)(1). For the most part, the President cannot, under the Act, create new job programs or expand existing ones without congressional approval. See 15 U.S.C. § 3131(b) ("The Congress shall initiate or develop such legislation as it deems necessary to implement proposals and objectives pursuant to this chapter...."). This requirement and the contingency of congressional action makes the redress of plaintiffs' injury not "likely" and indeed entirely "speculative." See Defenders of Wildlife, 504 U.S. at 561, 112 S.Ct. at 2136.
 
 
 13
 It is true that the Act may be read as granting to the President some "job creation" authority without the need for congressional approval. Even assuming that is so, however, that authority is highly discretionary. When, "in the judgment of the President," those willing and able to work cannot find public or private jobs through existing opportunities, the President shall establish job reservoirs through expansion of existing programs "as approved by the Secretary of Labor" or through initiating those new programs "as are determined necessary by the President." 15 U.S.C. § 3116(c)(1). However, because the Act provides no standards by which to judge the exercise of discretion by the Executive Branch, we cannot subject that exercise of discretion to judicial review. Dalton v. Specter, --- U.S. ----, ----, 114 S.Ct. 1719, 1728, 128 L.Ed.2d 497 (1994).
 
 CONCLUSION
 
 14
 Because enjoining the Executive Branch to comply with its responsibilities under the Act, assuming that it is not now doing so, would not likely redress plaintiffs' injury and because, in any event, the Executive Branch's exercise of discretion under the Act is not subject to judicial review, the district court correctly dismissed the action.
 
 
 15
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 The Honorable James M. Burns, Senior United States District Judge, District of Oregon, sitting by designation
 
 
 [1]
 We need not decide the presence of the remaining element of standing, traceability (or "causation"). Plaintiffs argue that their injury is fairly traceable to the President's failure to create or expand job programs under the Act. The district court concluded that plaintiffs' "injury is more properly attributable to any number of forces or the actions of independent third parties wholly separate from the alleged Presidential inaction relative to program implementation...."