## DESERT OUTDOOR ADVERTISING, INC., and Outdoor Media Group, Inc., Plaintiffs–Appellants,

v.

## The CITY OF MORENO VALLEY; Frank Garcia; Quintin K. Strom; Andrew Rodriguez; Ron Smith, Defendants–Appellees.

Nos. 95–55529, 95–55531.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 7, 1996.

Decided Dec. 20, 1996.

Paul E. Fisher, Fisher & Delsack, Newport Beach, CA, for plaintiff-appellant, Outdoor Media Group, Inc.

Michael F. Wright, Case, Knowlson, Burnett & Wright, Los Angeles, CA, for plaintiff-appellant, Desert Outdoor Advertising, Inc.

Dennis J. Mahoney, Mac Lachlan, Burford & Arias, San Bernardino, CA, for defendants-appellees.

Before: HUG, Chief Judge, PREGERSON and REINHARDT, Circuit Judges.

Opinion by Judge PREGERSON; Concurrence by Judge REINHARDT.

PREGERSON, Circuit Judge:

Appellants Desert Outdoor Advertising, Inc. ("Desert") and Outdoor Media Group, Inc. ("OMG") are billboard operators who conduct business in the City of Moreno Valley. In a suit against the City and several of its public officials, appellants challenged the constitutionality of Moreno Valley Ordinance No. 133, which regulates structures and signs. The district court granted summary judgment in favor of the City and granted judgment on the pleadings in favor of the public officials. The court denied appellants' summary judgment motion. We have jurisdiction under 28 U.S.C. § 1291. We reverse.

## BACKGROUND

The City of Moreno Valley was incorporated on December 3, 1984, in a formerly unincorporated area of Riverside County. In June 1987, the City adopted Moreno Valley Ordinance No. 133 based on a similar pre-existing Riverside County Ordinance.

Moreno Valley Ordinance No. 133 regulates both "off-site" and "on-site" structures and signs. Off-site structures and signs may include commercial or noncommercial messages. On-site structures and signs may only contain commercial messages. Off-site structures and signs are defined as structures and signs "used for the display of political messages and the promotion of products, goods, services, or business establishments not conducted, manufactured, or sold upon the premises on which the display is located." Moreno Valley Ordinance No. 133,

§ 19.2(a). The ordinance defines "on-site" structures and signs as "structures and signs that are erected or maintained to advertise goods sold, business conducted or services rendered on the parcel of land upon which the sign is located." *Id.* § 19.2(e).[1]

The ordinance imposes different restrictions on off-site and on-site structures and signs. Off-site structures and signs are subject to locational and structural restrictions and may be erected in only three zones in the City (medium manufacturing, heavy manufacturing, and service commercial). *Id.* § 19.3(a) & (b). Moreover, before anyone can erect an off-site sign, the ordinance requires that the person apply for a conditional use permit. *Id.* § 19.3(c). The ordinance states that the issuance of a permit by City officials is subject to findings that

> such a display will not have a harmful effect upon the health or welfare of the general public and will not be detrimental to the welfare of the general public and will not be detrimental to the aesthetic quality of the community or the surrounding land uses.

*Id.* § 19.3.

In contrast, on-site structures and signs, as long as they conform to certain restrictions, may be erected in any zone of the City. *Id.* § 19.4. Furthermore, no conditional use permit is required before erecting an on-site structure or sign.

Finally, four categories of off-site structures and signs are exempted from the locational restrictions and may be placed in any zone in the City. The exempted structures and signs are:

> (1) Official notices issued by any court or public body or officer;

> (2) Notices posted by any public officer in performance of a public duty or by any person in giving legal notice;

> (3) Directional, warning or information structures required by or authorized by law or by Federal, State or City authority; including signs necessary for the operation and safety of public utility uses;

> (4) A structure erected near a city or county boundary, which contains the name of such city or county and the names of, or any other information regarding, civic, fraternal or religious organizations located therein.

*Id.* § 19.2(d). Before the incorporation of the City, appellant Desert constructed an off-site sign on a location outside the three zones permitted under the ordinance. Desert built and maintained this off-site sign without county or City permits. County zoning laws in effect at that time did not allow off-site signs at that location. In 1987, the City annexed territory which included the location of Desert's off-site sign. In May 1988, appellant OMG built an off-site sign within the City's limits, but outside the three zones permitted under the ordinance. OMG did not obtain county or City permits either.

The City brought two separate state court actions against Desert and OMG to compel the removal of the Desert and OMG signs. Desert and OMG filed their own action against the City in United States District Court for damages, declaratory relief, and an injunction. The district court stayed that action pending outcome of the state court litigation. However, the district court retained jurisdiction over the federal constitutional claims. The state court entered judgment in favor of the City and against Desert and OMG on the state law claims, and issued a permanent injunction requiring Desert and OMG to remove their signs. OMG unsuccessfully appealed the state court's rulings, while Desert did not appeal. The City then filed a notice with the district court that the state court proceedings had concluded.

Desert, OMG, and the City then filed cross-motions for summary judgment on their federal claims. The various public officials named as individual defendants moved for judgment on the pleadings based on qualified immunity. The district court entered a judgment in favor of the City and the individual public officials, which Desert and OMG now appeal.

---

1. The ordinance contains an obvious typographical error and mistakenly refers to section "19.2(e)" as "19.2(3)." We will refer to this section as "19.2(e)" as the drafters intended.

## ANALYSIS

### I. Standing

■ The City contends that Desert and OMG do not have standing to challenge the constitutionality of its sign ordinance and the permit process. We review the question whether appellants have standing de novo. *Barrus v. Sylvania,* 55 F.3d 468, 469 (9th Cir.1995).

■ To have standing, Desert and OMG must satisfy three elements: (1) they must have suffered an injury in fact; (2) the injury must be fairly traceable to the City's challenged conduct and not the result of the independent action of some third party; and (3) it must be likely that the injury will be redressed by a favorable decision. *Medina v. Clinton,* 86 F.3d 155, 157 (9th Cir.1996).

In this case, Desert and OMG have shown all three elements of standing. First, appellants suffered an injury in fact because the City actually brought an enforcement action against appellants. *See Virginia v. American Booksellers Ass'n,* 484 U.S. 383, 393, 108 S.Ct. 636, 643, 98 L.Ed.2d 782 (1988) (standing requires party to have "actual and well-founded fear that the law will be enforced against them"); *Blair v. Shanahan,* 38 F.3d 1514, 1519 (9th Cir.1994) (courts inquire whether "plaintiffs showed a reasonable threat of prosecution under the statute"). Second, appellants' injury is directly traceable to the City's conduct in passing the ordinance and in attempting to compel appellants to remove their signs. Third, a declaration that the ordinance is unconstitutional would likely redress Desert and OMG's injuries by enabling them to maintain their signs.

■ Desert and OMG also have standing to challenge the permit requirement, even though they did not apply for permits, because applying for a permit would have been futile. *Aleknagik Natives Ltd. v. Andrus,* 648 F.2d 496, 499 (9th Cir.1980) (plaintiffs need not exhaust administrative remedies when doing so would be futile). Applying for a permit would have been futile because: (1) the City brought state court actions against Desert and OMG to compel them to remove their signs; and (2) the ordinance flatly prohibited appellants' off-site signs located outside the three permitted zones.

### II. The Permit Requirement for Off-Site Structures and Signs

■ Desert and OMG contend that the permit requirement violates the First Amendment because it gives "unbridled discretion" to City officials. We review the district court's grant of summary judgment de novo. *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), *cert. denied,* — U.S. —, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996).

■ A person must obtain a permit before erecting an off-site structure or sign. Although the issuance of a permit by City officials is subject to some objective criteria relating to locational and structural standards, City officials have discretion to deny a permit on the basis of ambiguous and subjective reasons. For example, the ordinance states that a permit shall issue subject to findings that the structure or sign "will not have a harmful effect upon the health or welfare of the general public and will not be detrimental to the welfare of the general public and will not be detrimental to the aesthetic quality of the community or the surrounding land uses." Moreno Valley Ordinance No. 133, § 19.3.

■ As the Supreme Court stated, "a law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional." *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 150–51, 89 S.Ct. 935, 938, 22 L.Ed.2d 162 (1969). Furthermore, we have noted that "a law cannot condition the free exercise of First Amendment rights on the 'unbridled discretion' of government officials." *Gaudiya Vaishnava Soc'y v. City and County of San Francisco,* 952 F.2d 1059, 1065 (9th Cir.1990) (citing *City of Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750, 755, 108 S.Ct. 2138, 2143, 100 L.Ed.2d 771 (1988)), *cert. denied,* 504 U.S. 914, 112 S.Ct. 1951, 118 L.Ed.2d 555 (1992).

Moreno Valley Ordinance No. 133 contains no limits on the authority of City officials to deny a permit. City officials have unbridled discretion in determining whether a particular structure or sign will be harmful to the community's health, welfare, or "aesthetic quality." Moreover, City officials can deny a permit without offering any evidence to support the conclusion that a particular structure or sign is detrimental to the community. Thus, we conclude that the permit requirement is unconstitutional.

## III. Regulation of Commercial Speech

■■■ To be valid, an ordinance that restricts commercial speech that concerns lawful activity and is not misleading must (1) seek to implement a substantial governmental interest; (2) directly advance that interest; and (3) reach no further than necessary. to accomplish the given objective. *Outdoor Systems, Inc. v. City of Mesa*, 997 F.2d 604, 610 (9th Cir.1993) (citing *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm.*, 447 U.S. 557, 563–66, 100 S.Ct. 2343, 2350–51, 65 L.Ed.2d 341 (1980)). As the party seeking to regulate commercial speech, the City has the burden of affirmatively establishing that the ordinance meets each of these three elements. *Board of Trustees of the State Univ. of New York v. Fox*, 492 U.S. 469, 480, 109 S.Ct. 3028, 3034–35, 106 L.Ed.2d 388 (1989); *see also Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 71 n. 20, 103 S.Ct. 2875, 2882 n. 20, 77 L.Ed.2d 469 (1983) ("party seeking to uphold a restriction on commercial speech carries the burden of justifying it").

Appellants contend that the City has failed to establish the existence of a substantial governmental interest that satisfies the first prong of the *Central Hudson* test. We agree.

■■■ Although aesthetics and safety represent substantial governmental interests, *see Metromedia, Inc. v. San Diego*, 453 U.S. 490, 507–08, 101 S.Ct. 2882, 2892, 69 L.Ed.2d 800 (1981) ("traffic safety and the appearance of the city are substantial governmental goals"), in this case, the City has not shown that it enacted its ordinance to further any interest in aesthetics and safety. The ordinance lacks any statement of purpose concerning those interests. *See National Advertising Co. v. Town of Babylon*, 900 F.2d 551, 555–56 (2d Cir.) (invalidating ordinance containing no statement of purpose), *cert. denied*, 498 U.S. 852, 111 S.Ct. 146, 112 L.Ed.2d 112 (1990). Furthermore, the City provided no evidence that the ordinance promotes those interests. Because the City failed to provide any evidence that it had an interest in safety and aesthetics or that the ordinance furthered those interests, the district court erred in granting summary judgment in favor of the City.[2]

## IV. Regulation of Noncommercial Speech

■■■ Under the Supreme Court's decision in *Metromedia*, "an ordinance is invalid if it imposes greater restrictions on noncommercial than on commercial billboards or regulates noncommercial billboards based on their content." *National Advertising Co. v. City of Orange*, 861 F.2d 246, 248 (9th Cir. 1988) (citing *Metromedia*, 453 U.S. at 513, 516, 101 S.Ct. at 2895, 2897). We find that the ordinance's restrictions on noncommercial speech are invalid on each of these grounds.

### A. Greater Restrictions on Noncommercial Speech

■■■ Under the ordinance, on-site structures and signs are limited to commercial structures and signs. *See* Moreno Valley Ordinance No. 133, § 19.2(e) (on-site struc-

---

**2.** Insofar as billboards are concerned, the burden on the City of meeting the first prong of the *Central Hudson* test is not a great one. Had the City enacted the ordinance with a clear statement of purpose indicating the City's interest in eliminating the hazards posed by billboards to pedestrians and motorists and in preserving and improving its appearance, the City would have demonstrated that the ordinance sought to implement substantial governmental interests, and would thus have satisfied the first prong of the *Central Hudson* test. *See Metromedia*, 453 U.S. at 493, 507–10, 101 S.Ct. at 2885, 2892–94 (recognizing that billboards are "real and substantial hazards to traffic safety" and "by their very nature … can be perceived as an 'esthetic harm'").

tures and signs are structures and signs erected "to advertise *goods sold, business conducted* or *services rendered*") (emphasis added). These on-site commercial structures and signs may be erected in any zone of the City without obtaining a permit. *Id.* § 19.3. In contrast, off-site structures and signs can include both commercial structures and signs and noncommercial "political messages." *Id.* § 19.2(a). The ordinance restricts these off-site structures and signs, including noncommercial messages, to three zones. Moreover, the ordinance requires that anyone seeking to erect such a structure or sign first obtain a permit. *Id.* § 19.3(a).

Moreno Valley Ordinance No. 133 unconstitutionally imposes greater restrictions upon noncommercial structures and signs than it does upon commercial structures and signs. *See Metromedia,* 453 U.S. at 513, 101 S.Ct. at 2895 (invalidating ordinance allowing on-site *commercial* signs but not allowing on-site *noncommercial* signs).

For example, while a business owner located outside the three permitted zones can have an on-site commercial sign, that owner may not display an "Elect Jane Doe" sign because such signs are prohibited outside the three permitted zones. Similarly, homeowners may not post a "Vote for Smith" sign in their yards unless they live within the three zones and first obtain a permit.

As the Supreme Court aptly noted in *Metromedia,* "[t]he fact that the city may value commercial messages relating to onsite goods and services more than it values commercial communications relating to offsite goods and services does not justify prohibiting an occupant from displaying its own ideas or those of others." *Id.*

### B.  Content–Based Regulation

The City's ordinance also violates the First Amendment because it regulates noncommercial speech on the basis of content. *National Advertising,* 861 F.2d at 248. In *National Advertising,* we invalidated an ordinance that regulated noncommercial billboards based upon their content. *Id.* In that case, the City of Orange passed an ordinance that prohibited commercial and noncommercial off-site signs, subject to several exemp-

tions for certain noncommercial off-site signs such as governmental signs and traffic flow and safety signs. *Id.* at 247, 248 n. 2. In *National Advertising,* we noted that exemptions to the restriction on noncommercial signs required examination of the content of those signs because "[i]n most instances, whether offsite noncommercial signs are exempted or prohibited turns on whether or not they convey messages approved by the ordinance." *Id.* at 248.

■■■ In this case, as in *National Advertising,* the City has exempted certain noncommercial off-site structures and signs from the general zoning restriction for such signs. Moreno Valley Ordinance No. 133, § 19.2(d) (allowing, for example, official notices and directional or informational signs in any zone). Because the exemptions require City officials to examine the content of noncommercial off-site structures and signs to determine whether the exemption applies, the City's regulation of noncommercial speech is content-based. *See Metromedia,* 453 U.S. at 515, 101 .S.Ct. at 2896 ("With respect to noncommercial speech, the city may not choose the appropriate subjects for public discourse."); *National Advertising,* 861 F.2d at 248 (holding ordinance unconstitutional when exemptions to ordinance's restrictions depend upon content of noncommercial messages.); *National Advertising Co. v. Town of Babylon,* 900 F.2d 551, 557 (2d Cir.) (exemptions from noncommercial speech restriction "impermissibly discriminates between types of noncommercial speech based upon content"), *cert. denied,* 498 U.S. 852, 111 S.Ct. 146, 112 L.Ed.2d 112 (1990).

This content-based restriction is unconstitutional unless the City establishes that the ordinance is " 'necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end.' " *National Advertising,* 861 F.2d at 249 (*quoting Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983)). In this case, the City failed to present any evidence that its ordinance promoted a substantial governmental interest, much less a compelling one. Thus, we find that the ordinance is unconstitutional

because it impermissibly regulates noncommercial speech on the basis of content.[3]

### V. Severance

Section 2.1 of the ordinance contains a severability clause which states:

> It is the intention of the City Council in adopting this ordinance that each provision, section, sentence, clause and phrase shall be given effect and enforced to the extent legally possible without regard to whether any other provision, section, sentence, clause or phrase is found to be invalid or unenforceable.

■■■ Generally, only that part of an ordinance that is constitutionally infirm will be invalidated, leaving the rest intact. *National Advertising,* 861 F.2d at 249. However, "[w]hether partial invalidation is appropriate depends on the intent of the City in passing the ordinance and whether the balance of the ordinance can function independently." *Id.* at 249–50.

We have held the City's ordinance invalid because: (1) it has a standardless permit requirement; (2) the City has failed to establish a substantial governmental interest in regulating commercial speech; (3) it imposes greater restrictions upon noncommercial than upon commercial speech; and (4) the exemptions for certain noncommercial structures and signs are content-based and not supported by a compelling governmental interest.

■■■ To invalidate the constitutionally infirm parts of the ordinance, we must strike the permit requirement. We also must strike the definition and regulation of on-site commercial structures and signs which allowed only on-site commercial signs in any zone of the City. Finally, we must strike the definition and restrictions on off-site noncommercial speech, including the zoning limitation and the exemptions.

Because the balance of the ordinance cannot function independently after we strike the unconstitutional provisions, we need not consider the City's intent in passing the ordinance, and we declare the entire ordinance invalid.

### VI. Qualified Immunity

■■■ We review a grant of judgment on the pleadings de novo. *Marx v. Loral Corp.,* 87 F.3d 1049, 1053 (9th Cir.1996). A judgment on the pleadings is properly granted when, taking all the allegations in the pleading as true, the moving party is entitled to judgment as a matter of law. *Merchants Home Delivery Serv., Inc. v. Frank B. Hall & Co.,* 50 F.3d 1486, 1488 (9th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 418, 133 L.Ed.2d 335 (1995).

Government officials performing discretionary functions are shielded from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

■■■ Here, the City officials are not entitled to qualified immunity. For over fifty years, it has been clearly established that a licensing scheme is impermissible if it allows officials unfettered discretion to impose prior restraints on speech. *See Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 150–51 & n. 2, 89 S.Ct. 935, 938–39 n. 2, 22 L.Ed.2d 162 (1969) (citing decisions from the preceding thirty years). Furthermore, the Supreme Court's decision in *Metromedia* and our holding in *National Advertising* make it clear that a City cannot impose greater restrictions on commercial speech than on noncommercial speech, and cannot regulate noncommercial speech on the basis of content. Because the City officials, in attempting to enforce the ordinance, violated clearly established constitutional rights of which a reasonable person would have known, they are not entitled to qualified immunity. Thus, we reverse the district court's grant of judgment on the pleadings.

REVERSED AND REMANDED.

---

3. Because we find the ordinance unconstitutional under the First Amendment, we need not address appellants' Equal Protection or takings claims.

REINHARDT, Circuit Judge, concurring:

I agree with the majority's excellent opinion and all of its analysis, with one minor exception. It is far from clear that the ordinance exempts on-site structures and signs from the permit requirement or that it permits such structures and signs in all areas of the City, including residential zones. Section 19.2(e) of the ordinance defines on-site signs as a category of "outdoor advertising displays." Section 19.3 then imposes a permit requirement on *all* outdoor advertising displays and makes no exception for on-site signs. Section 19.3(a) further states that outdoor advertising displays "shall be permitted only within the M–M (Medium Manufacturing), M–H (Heavy Manufacturing), and the M–S–C (Service Commercial) Zones and will not be permitted in any other zone." § 19.3(a)(1).

It must be noted that the majority's interpretation is a valiant and plausible attempt to make sense of what is a very poorly drafted law. The ordinance is internally contradictory in its use of the terms "displays" and "structures" and appears to use those terms indiscriminately and inconsistently, even within a single provision. *See, e.g.,* § 19.3(c)(1) (governing permit applications). Moreover, the provision that purports to regulate on-site signs is simply unintelligible: "No person shall erect an on-site advertising structure or sign in the City of Moreno Valley that is in violation of the provisions contained within any specific zoning classification in this ordinance that is in violation of the following provisions." § 19.4. Thus, it is easy to see why the majority, struggling to arrive at a rational construction of the ordinance, interprets it as it does.

Whether or not one construes the ordinance in the same manner as the majority, the majority's essential arguments remain correct. Specifically, under both its construction and mine, it remains clear that the ordinance discriminates against political speech. Section 19.5 of the ordinance permits "for sale, lease or rent signs" to be placed in all zones of the City, and section § 19.(2)(d) entirely exempts from regulation four additional types of nonpolitical signs. Political speech, however, is permissible only in the form of off-site displays, which are restricted to the manufacturing and service-commercial zones specified in section 19.3(a)(1). Thus, under either construction, the majority's holding regarding political speech remains the same.

The majority's remaining conclusions—namely, that the ordinance imposes a standardless licensing requirement, and that it regulates speech on the basis of content—are entirely unaffected by our minor disagreement over one aspect of the ordinance, and I share those conclusions without reservation.